IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| KELVIN ROSA, | : | Civ. Action No. 20-4686 (RMB) |
| Petitioner | : | |
| v. | : | **MEMORANDUM ORDER** |
| JAMES SLAUGHTER, ADMINISTRATOR and ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, | : | |
| Respondents | : | |

This matter comes before the Court upon Respondents' motion for a stay of this Court's Opinion and Order of March 31, 2023, granting Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254. (Mot. for Stay, Docket No. 29.) For the reasons discussed below, the Court will grant Respondent's motion for a stay.

I.  INTRODUCTION

On March 31, 2023, this Court granted Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 because he received ineffective assistance when his counsel failed to make objections and request proper limiting instructions to mitigate the severe prejudice to Petitioner by the misuse of Rule 404(b) evidence at trial. The Court incorporates the Opinion by reference (Opinion, Docket No. 24; Order, Docket No. 25) and will discuss below the issues necessary to resolve Respondent's motion for a stay pending appeal.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(c) governs stays pending appeal and creates a presumption of release from custody for a successful habeas petitioner. The presumption of release may be overcome where a stay of the order is appropriate under traditional rules governing stays. *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987). "[F]ederal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *Id.* at 775 (citing *e.g.*, *Rogers v. Richmond*, 365 U.S. 534, 549 (1961); *Dowd v. United States ex rel. Cook*, 340 U.S. 206, 210 (1951); *In re Bonner*, 151 U.S. 242, 261–262 (1894)). In determining a motion to stay pending appeal, courts should consider the traditional factors governing issuance of a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. In addition to these traditional factors, for habeas cases, courts should consider: (1) the possibility of flight; (2) the risk that the prisoner will pose a danger to the public; and (3) "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal[,]" an interest which is "strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.* at 777. In further guidance for balancing these factors, the Supreme Court has stated:

> Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. *Cf. McSurely v. McClellan*, 225 U.S.App.D.C. 67, 75, 697 F.2d 309, 317 (1982); *O'Bryan v. Estelle*, 691 F.2d 706, 708 (CA5 1982), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Ruiz v. Estelle*, 650 F.2d 555, 565–566 (CA5 1981). Where the State's showing on the merits falls below this level, the preference for release should control.

*Id.* at 778. Therefore, the Court turns to consideration of those factors.

### III. DISCUSSION

#### A. Whether the Stay Applicant Has Made a Strong Showing that He is Likely to Succeed on the Merits

##### 1. The Court's Decision is Based on Ineffective Assistance of Counsel

Respondents' make the following points regarding their likelihood of success on appeal: (1) the Court improperly relied on its disagreement with the state courts' conclusion that the evidence was admissible; (2) the Court failed to give deference to the state courts' conclusion that Petitioner was not prejudiced. (Docket No. 29-1 at 8-31.) To the first point, this Court did not rule that the trial court erred under New Jersey Rule of Evidence ("N.J.R.E.") 404(b) in holding prior crimes, acts or wrongs admissible to prove identity of the gun used in the charged offenses, and to link that gun to the defendant. Undeniably, this Court disagreed with how that evidence was presented at trial, and concededly defense counsel made some attempt to constrict the testimony to that necessary to establish identity of the gun and Petitioner's

3

presence with that gun during prior acts. However, counsel's objections were too little too late, the damage was already done.

The limiting instruction given to the jury before its deliberation exacerbated the prejudice to defendant by improperly focusing on the commission of a prior crime rather than the prior act of possessing the same gun. (Opinion, Docket No. 24 at 57-59.) Specifically, the evidence was admitted to show only that defendant possessed the same gun that was used to shoot Officer Rodgers during the United Check Cashing burglary during the course of the Amaro Foods Burglary and the Paramus Eluding Incident. Effective defense counsel is required to make appropriate objections and to request carefully tailored limiting instructions, or alternatively, to object to an improper jury instruction. *See, State v. Gillispie*, 208 N.J. 59 ( 2011) ("*Gillispie* II") ("We take this occasion to remind litigants and trial judges that other-crimes evidence must be appropriately sanitized…. Independently, we also emphasize the importance of a firm and clear jury instruction when dealing with other-crimes evidence"), *see also*, ABA Criminal Justice Standards, Defense Function Standard 4-7.6(e) Presentation of Evidence ("Defense counsel should exercise strategic judgment regarding whether to object or take exception to evidentiary rulings that are materially adverse to the client, and not make every possible objection….") and Standard 4-1.5 Preserving the Record ("At every stage of representation, defense counsel should take steps necessary to make a clear and complete record for potential review" which may include "making objections and

placing explanations on the record" and "requesting or objecting to jury instructions.")

### 2. The Prejudicial Nature of Rule 404(b) Evidence

To understand the inherently prejudicial nature of New Jersey Rule 404(b) evidence, the Court begins with the text of the rule:

> (b) Other Crimes, Wrongs, or Acts.
>
> (1) Prohibited Uses. Except as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.
>
> (2) Permitted Uses. This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute.

N.J.R.E. 404(b). "[T]he [404(b)] evidence must relate to a material issue that is in dispute…." *State v. Skinner*, 218 N.J. 496, 515 (2014) (alteration added). It is well settled that admission of prior crimes or bad acts under N.J.R.E. 404(b) is inherently prejudicial and deserving of careful scrutiny. "The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is a bad person in general." *State v. Rose*, 206 N.J. 141, 159, 19 A.3d 985, 996 (2011) (quoting *State v. Cofield*, 127 N.J. 328, 336 (1992) (citation and internal quotation marks omitted). "[T]he very purpose of Rule 404(b) is simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the

5

government's evidence." *State v. Skinner*, 218 N.J. 496, 517, (2014) (quoting [*State v.*] *Rose*, 206 N.J. [141], 180 [2011] (internal quotation marks omitted) (quoting *United States v. Green*, 617 F.3d 233, 249 (3d Cir.) (internal quotation marks omitted), *cert. denied*, 131 S. Ct. 363 (2010)).

Judge Alameida explained his pretrial ruling on admission of N.J.R.E, 404(b) evidence, in relevant part:

> Proof of the defendant's use or possession of a handgun in one crime can be used to establish the identity of the person or persons who committed another crime with the same handgun. … The use and possession of the same gun in three distinct matters is not only relevant but it's probative as to the issue of the perpetrators' identity. **… In this case, the similarity of the North Bergen incident, the Paramus incident, and the Willingboro incident is not the reason for seeking admission of this evidence**. Rather, it is the weapon, the identity of the weapon. … There of course is prejudice…. However, there are ways of minimizing, sanitizing that particular impact…. It's my intention at the conclusion of this oral opinion to provide counsel with copies of the other crimes evidence charge. I intend on directing counsel specific acts that may not be mentioned and may not be testified to during the trial of this case and I'm going to urge counsel to draft a charge, meeting with each other prior to the trial to draft a charge that will minimize the prejudice or eliminate the prejudice as to Mr. Jimenez as it relates to the North Bergen incident with which he wasn't involved and sanitizing the aspects that I'm going to direct be taken out. …
>
> The testimony relating to Mr. Rosa's intention to shoot Officer McGovern immediately after the stop that occurred on February 3rd, 2005, may not be introduced in any way. Mr. Nunez's testimony in that regard must not, will not be permitted and a mistrial will be caused if that testimony comes out. The prejudice to Mr. Rosa with the admission of that testimony is immense and it is not relevant to the weapons identity in this case.

6

(Docket No. 18-5 at 3-12).

To reduce "the inherent prejudice in the admission of other-crimes evidence," the New Jersey Supreme Court explained:

> trial courts are required "to sanitize the evidence when appropriate," [State v.] Rose, 206 N.J. [141], 161, 19 A.3d 985 [2011] (quoting [State v.] Barden, 195 N.J. [375,] 390, 949 A.2d 820) [2008]….
>
> To further minimize the inherent prejudice in the admission of other-crimes evidence, a carefully crafted limiting instruction "must be provided to inform the jury of the purposes for which it may, and for which it may not, consider the evidence of defendant's [other crimes], both when the evidence is first presented and again as part of the final jury charge." Rose, 206 N.J. at 161, 19 A.3d 985 (citing Barden, 195 N.J. at 390, 949 A.2d 820). However, the inherently prejudicial nature of other-crimes evidence "casts doubt on a jury's ability to follow even the most precise limiting instruction." [State v.] Reddish, 181 N.J. [553], 611, 859 A.2d 1173 [2004] (quoting State v. Fortin, 162 N.J. 517, 534, 745 A.2d 509 (2000)).

*State v. Green*, 236 N.J. 71, 84–85 (2018).

To Respondents' second point on likelihood of success on appeal, that deference is owed to the state court's finding of harmless error on direct appeal of Petitioner's challenge to admission of the Rule 404(b) evidence, deference is not owed because the state court did not apply the prejudice standard required under *Strickland*. "[W]hen a defendant challenges a conviction" the governing standard for *Strickland* prejudice "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 695 (1984)). Even if the harmless error standard

employed by the state court on direct appeal of the evidentiary ruling is similar to the *Strickland* prejudice standard, this Court summarized why the State court's brief discussion of harmless error was unreasonable:

> Petitioner was prejudiced as soon as the prosecutor suggested in his opening statement that this was a case about burglaries so similar that Petitioner must have committed these signature crimes. The prejudice became worse when multiple witnesses described the Amaro Foods Burglary in such detail, the only purpose for which was to suggest the United Check Cashing Burglary must have been committed by the same people. The one topic that was strictly precluded by Judge Almeida's pretrial 404(b) ruling and predicted to result in a mistrial, came in and no mistrial was requested. Even then, the prejudice worsened when the jury heard the dramatic story of the dangerous conditions under which the police officers apprehended Petitioner after the traffic stop. All without proper limiting instructions. When the final jury instruction was given, it only caused more confusion. In the end, counsel's deficient performance resulted in a trial where it was impossible for the jury to focus on the crimes that Petitioner was being tried for. Because of these errors, Petitioner was ultimately on trial for those alleged prior bad acts, and was denied a fair trial.

(Opinion, Docket No. 24 at 59-60.)

On direct appeal of Petitioner's challenge to admission of the N.J.R.E. 404(b) evidence, the state court's decision that Petitioner was not prejudiced was unreasonable. Under the *Strickland* prejudice prong, counsel's errors were likely to cause the jury to convict based on defendant's propensity to commit burglaries, where the remaining evidence against Petitioner was largely uncorroborated accomplice testimony of Nunez, and a vague statement about a gun made to Officer Serrano when Petitioner arrested Petitioner in the Dominican Republic. In sum,

Respondents' have not made a strong showing on the likelihood of success on the merits. Nonetheless, continued custody is permissible if the second and fourth factors of the traditional stay analysis militate against release, together with the possibility of flight and danger to the public posed by the petitioner's release, and the length of the sentence remaining,. *Hilton*, 481 U.S. at 777-78.

### B.   Whether the Applicant Will Be Irreparably Injured Absent a Stay

Respondents contend the State will suffer irreparable injury absent a stay pending appeal because the 30-day time period to determine whether to initiate a new trial or release Petitioner does not provide the State sufficient time to appeal prior to commencing a new trial. It is true that denial of a stay pending appeal may render the appeal moot. Therefore, Respondents have established the possibility of irreparable injury, the inability to appeal, absent a stay.

### C.   Injury to Petitioner

Respondents contend that Petitioner is not subject to appreciable harm if the motion to stay pending appeal is granted. Given the seriousness of the charges and Petitioner's status as a Dominican Republic national with a history of flight from criminal charges, substantial bail will likely be set and preclude his release pending appeal and/or retrial. The likelihood of substantial bail reduces the harm to Petitioner by continuing his custody pending appeal, and this factor does not strongly weigh in favor of release.

### D.   The Public Interest, Risk of Flight, Danger to the Public and Length of Sentence

Respondents submit that the public has an interest in guarding against the waste of judicial resources required by immediate retrial of Petitioner. Denial of Respondents' motion for a stay pending appeal would force the State to incur substantial expenses in time and resources to convene a retrial. Success on appeal could avoid those significant expenditures. Respondents contend that the public has an interest in obtaining meaningful appellate review based on the seriousness of the offense, including attempted murder of a police officer that ended his career.

The public has a strong interest in upholding the Constitutional guarantees in a criminal trial. However, the additional factors present for issuance of a stay pending appeal where habeas relief has been granted, unlike stays in typical civil actions, weigh in favor of continued custody. Petitioner poses a risk of flight if released pending appeal. He was previously returned to the United States from the Dominican Republic to face the criminal charges at issue here. This Court's grant of habeas relief does not preclude Petitioner's retrial. Therefore, there is a potential he will be convicted for attempted murder of a police officer, an offense that suggests his release poses a danger to the public. Finally, Petitioner has served approximately half of his 30-year sentence, and is ineligible for parole until the year 2034, which is a factor that creates a strong interest in the State retaining custody during appeal. *Hilton*, 481 U.S. at 777. The Court finds that the factors balance in favor of Petitioner's continued custody pending Respondents' appeal.

**IT IS** therefore on this **18th day of May 2023**,

**ORDERED** that the Clerk shall reopen this matter for entry of this Order; and it is further

**ORDERED** that Respondents' motion to stay pending appeal pursuant to Federal Rule of Appellate Procedure 23(c) (Docket No. 29) is **GRANTED**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Order and the accompanying Opinion on Petitioner by regular U.S. mail; and it is further

**ORDERED** that the Clerk shall close this matter.

                                                              s/Renée Marie Bumb
                                                              RENÉE MARIE BUMB
                                                              Chief United States District Judge